FILED
2020 Apr-15 PM 03:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

CHRISTOPHER S. GILLILAND, )
)
Plaintiff, )
)
v. )
) Case No.: 5:18-cv-01245-SGC
SOCIAL SECURITY )
ADMINISTRATION, Commissioner, )
)
Defendant. )

**MEMORANDUM OPINION**[1]

The plaintiff, Christopher S. Gilliland, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Gilliland timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Gilliland has at least a high school education and past relevant work experience as a maintenance worker, heavy equipment operator, and dump truck driver. (Tr. at 18-19). In his application for DIB, Gilliland alleged he became

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 12).

disabled on January 15, 2004, due to anxiety, panic attacks, degenerative disc disease, chronic low back pain, a herniated disc, and high blood pressure. (*Id.* at 224). After his claim was denied, Gilliland requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 11). Following a hearing, the ALJ denied Gilliland's claim. (*Id.*). Gilliland was 37 years old when the ALJ issued her decision. (*Id.* at 19-20). After the Appeals Council denied review of the ALJ's decision (*id.* at 1-3), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Gilliland commenced this action. (Doc. 1).

## II. <u>Statutory and Regulatory Framework</u>

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show he was disabled between his alleged initial onset date and his date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).

The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Gilliland last met the Social Security Administration's insured status requirements on December 31, 2009, and has not engaged in substantial gainful activity since January 15, 2004, the alleged onset date of his disability. (Tr. at 13).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Gilliland had the following severe impairments through his date last insured: lumbar radiculopathy, lumbago, sacroiliac joint syndrome, and obesity. (Tr. at 14).

If the claimant has a severe impairment or combination of impairments, the

Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Gilliland did not have an impairment or combination of impairments through his date last insured that met or medically equaled the severity of one of the Listings. (Tr. at 14).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing his past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Gilliland had the RFC to perform a limited range of light work through his date last insured. (Tr. at 14).[2] At the fourth step, the ALJ determined Gilliland was not able to perform his

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying

past relevant work through his date last insured. (*Id.* at 32).

If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1).

At the fifth step, considering Gilliland's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy that Gilliland could perform through his date last insured, such as those of cashier, counter clerk, and laundry folder. (Tr. at 19). Therefore, the ALJ concluded Gilliland was not under a disability at any time between January 15, 2004, the alleged onset date of his disability, and December 31, 2009, his date last insured. (*Id.* at 20).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination of

---

of objects weighing up to 10 pounds" and may require "a good deal of walking or standing . . . or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."

*Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**IV. <u>Discussion</u>**

On appeal, Gilliland argues the ALJ erred by (1) improperly discrediting his testimony regarding his pain and other subjective symptoms, (2) failing to consider the effect of his obesity on his other severe impairments, (3) failing to fully and fairly develop the record to the extent he should have ordered a consultative examination or retained a medical expert to review Gilliland's medical records, and (4) disregarding the opinion of his psychiatrist and determining his alleged anxiety was not a medically determinable impairment during the relevant period. (Doc. 25).

**A. Subjective Symptoms Testimony**

A claimant may establish disability through testimony of pain or other subjective symptoms. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). To do so, he must satisfy a three-part "pain standard," by showing (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain or other subjective symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or other subjective symptoms. *Id.*; *see also Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 581548, at *2 (11th Cir. 2019) (citing *Dyer*, 395 F.3d at 1210); 20 C.F.R. § 404.1529; SSR 16-3p. A claimant's subjective testimony supported by medical

evidence that satisfies the pain standard is sufficient to support a finding of disability. *Brown*, 921 F.2d at 1236 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1552 (11th Cir. 1986)).

An ALJ may discredit a claimant's testimony regarding his pain or other subjective symptoms provided he or she clearly articulates explicit and adequate reasons for doing so. *Brown*, 921 F.2d at 1236; *Taylor*, 2019 WL 581548, at *2 (citing *Dyer*, 395 F.3d at 1210). In evaluating a claimant's testimony and other statements regarding the intensity, persistence, and limiting effects of his symptoms, an ALJ considers all available evidence. 20 C.F.R. § 404.1529(c).

The ALJ determined that while Gilliland's medically determinable impairments could reasonably be expected to cause his alleged pain and other subjective symptoms, Gilliland's statements concerning the intensity, persistence, and limiting effects of his pain and other subjective symptoms were not entirely consistent with the medical and other evidence of record. (Tr. at 15). The discussion that followed this determination included multiple reasons for discrediting Gilliland's testimony, each of which was supported by substantial evidence.

Gilliland presented to Dr. Roger Ray, a neurosurgeon, in December 2005 and reported a two-year history of pain in his low back and left extremity, brought on by a work injury. (*Id.* at 353, 841). Imaging revealed Gilliland had a herniated disc

between his fourth and fifth lumbar vertebrae. *(Id. a*t 347, 351). Dr. Ray performed spinal decompression surgery on Gilliland in January 2006. (*Id.* at 358-61). Gilliland initially reported some improvement following the surgery. (*Id.* at 349). He returned to Dr. Ray in September 2006 and reported he had been experiencing worsening pain since twisting his back in July 2006. (*Id.* at 347). Dr. Ray gave Gilliland prescriptions for a steroid and pain reliever, and Gilliland reported several weeks later that he was doing a little better. (*Id.* at 347-48). At that time, Dr. Ray encouraged Gilliland to lose weight. (*Id.* at 348).

Gilliland returned to Dr. Ray in mid-May 2007 and reported increasing back pain over the previous three weeks. (*Id.* at 346). Dr. Ray gave Gilliland prescriptions for a steroid, a muscle relaxer, and a pain reliever. (*Id.* at 346). At a follow-up visit in late-May 2007, Dr. Ray offered to do a surgical evaluation because Gilliland reported that while his symptoms had improved slightly he was still unable to do his daily routine. (*Id.* at 345). After imaging completed as part of the surgical evaluation showed Gilliland had what appeared to be a recurrent herniated disc, Dr. Ray noted Gilliland might be a candidate for spinal fusion surgery. (*Id.* at 340, 344).

At this point, Gilliland sought a second opinion from Dr. Joel Pickett, another neurosurgeon. (*Id.* at 841). Dr. Pickett expressed some doubt as to whether spinal fusion surgery would resolve Gilliland's pain. (*Id.* at 630-31, 634). He opined that if Gilliland lost weight his pain probably would improve and stated "he would like

to see that degree of dedication" from Gilliland before performing a fusion. (*Id.* at 630). Dr. Pickett referred Gilliland to Dr. Keith Anderson to facilitate weight loss. (*Id.*).

Gilliland saw Dr. Anderson in December 2007. (*Id.* at 841). Dr. Anderson prescribed a diet and exercise program for Gilliland, with the goal of losing twenty pounds over the following eight weeks, and instructed Gilliland to follow up with him at the conclusion of those eight weeks. (*Id.*). There is no record of any return visit Gilliland made to Dr. Anderson.

Dr. Pickett also referred Gilliland to Dr. Ronald Collins, a pain management specialist. (*Id.* at 634). Dr. Collins performed at least nine nerve root blocks on Gilliland between June 2007 and December 2009. (*Id.* at 868, 873, 890, 977, 992, 926, 1006, 1017).

The foregoing summary of Gilliland's medical records for the relevant period demonstrates that following the spinal decompression surgery Dr. Ray performed in January 2006, Gilliland received relatively conservative treatment for his back pain in the form of prescription medication and nerve root blocks. Moreover, while both Dr. Ray and Dr. Pickett recommended Gilliland lose weight to relieve his back pain, there is no evidence Gilliland complied with this treatment recommendation. Both the conservative nature of a claimant's treatment and a claimant's failure to comply with a treatment recommendation are valid reasons for discrediting a claimant's

testimony regarding his pain and other subjective symptoms. *See Draughon v. Comm'r, Soc. Sec. Admin.*, 706 F. App'x 517, 520 (11th Cir. 2017) (holding conservative nature of claimant's treatment and claimant's declination of certain treatment supported ALJ's decision to discredit claimant's testimony regarding his pain); *Doig v. Colvin*, 2014 WL 4463244, at *4 (M.D. Fla. Sept. 10, 2014) ("The meaning of 'conservative treatment' is well known; it includes any mode of treatment which is short of surgery. Treatment with medication, whether prescribed or over-the-counter, and steroid injections is still conservative treatment, i.e. not surgery.").

Gilliland claims the ALJ erred by omitting a discussion of the narcotic pain reliever and other medication Dr. Collins consistently prescribed to treat his back pain between June 2007 and January 2010. (Doc. 25 at 11-14). An ALJ does not have to refer in his decision to every piece of evidence included in the record. *Dyer*, 395 F.3d at 1211. Moreover, the medication prescribed by Dr. Collins is, like the nerve root blocks he administered, conservative treatment and, thus, supports one of the reasons articulated by the ALJ for discrediting Gilliland's testimony regarding his pain and other subjective symptoms.

Gilliland also claims that while the ALJ stated Dr. Collins' treatment notes "revealed little evidence of the effectiveness" of the nerve root blocks he administered, those notes do contain evidence the treatment he received from Dr.

Collins was not entirely effective in the form of subjective pain levels he reported following those treatments. (Doc. 28 at 3-4). Finally, he claims imaging of his spine performed in June 2007, which indicated a recurrent herniated disc, confirmed his testimony of disabling pain. (Doc. 25 at 14-16). As discussed above, the ALJ articulated adequate reasons, which are supported by substantial evidence, for discrediting that testimony. Essentially, Gilliland asks the undersigned to reweigh the evidence of record. However, as stated, the relevant question is not whether evidence supports Gilliland's argument but whether substantial evidence supports the ALJ's determination. *See Moore*, 405 F.3d at 1213 (discussing "narrowly circumscribed" nature of appellate review). Accordingly, Gilliland's first claim of error is without merit.

**B. Combined Effect of Impairments**

An ALJ must consider the combined effects of a claimant's impairments in determining whether he is disabled. *Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)); 20 C.F.R. § 404.1523(c). At step two of the sequential analysis, the ALJ stated Gilliland "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the [Listings]" through his date last insured. (Tr. at 14). The Eleventh Circuit has held this statement satisfies an ALJ's obligation to consider a claimant's impairments in combination at step two. *See Jones v. Dep't of*

*Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002).[3]

In determining Gilliland's RFC, the ALJ explicitly discussed not only Gilliland's musculoskeletal impairments but also his obesity. (Tr. at 14-18). More specifically, with respect to Gilliland's obesity the ALJ stated, "[T]he medical records do not support a finding [Gilliland's] obesity has so substantially exacerbated his other severe impairments so as to diminish his [RFC] and render him unable to work." (*Id.* at 18). This discussion makes clear the ALJ satisfied her obligation to consider the combined effects of Gilliland's impairments, including his obesity, in determining Gilliland's RFC and otherwise evaluating his claim. *See Nichols v. Comm'r, Soc. Sec. Admin.*, 679 F. App'x 782, 797 (11th Cir. 2017) (holding there was no merit to claim ALJ failed to evaluate claimant's impairments in combination, where ALJ explicitly stated several times he was considering claimant's impairments in combination; also stated he had considered entire record, all symptoms, and extent to which symptoms could be accepted as consistent with other evidence; and engaged in exhaustive discussion of claimant's impairments and

---

[3] Gilliland claims *Jones* and *Wilson* are at odds with the Eleventh Circuit's earlier decision in *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987), and that the "prior precedent rule" requires this district court to follow *Walker*. (Doc. 28 at 7-9). In *Walker*, the Eleventh Circuit held " 'it is the duty of the . . . [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.'" 826 F.2d at 1001 (quoting *Bowen*, 748 F.2d at 635). Because the ALJ did discuss Gilliland's obesity in detail later in her analysis, it is not necessary to reconcile the decisions cited by Gilliland.

their functional limitations). Accordingly, Gilliland's second claim of error is without merit.

**C. Development of Record**

A claimant bears the burden of proving he is disabled by submitting evidence to support his claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). An ALJ does have a duty to develop the medical record fully and fairly, which in some cases requires an ALJ to order a consultative examination. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988). However, an ALJ is not required to order a consultative examination if the record contains sufficient evidence to make an informed decision. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)). Moreover, determination of a claimant's RFC is not a medical determination; it is a determination for an ALJ, not a doctor. 20 C.F.R. § 404.1546(c); *Moore v. Soc. Sec. Admin., Com'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). Therefore, an ALJ is not required to obtain a medical opinion regarding a claimant's functional abilities. *Dodson v. Colvin*, 2014 WL 2465304, at *5 (N.D. Ala. June 2, 2014) (citing *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007)).

The ALJ in this case had sufficient evidence before her to assess Gilliland's

impairments and the functional limitations they imposed. She engaged in a thorough discussion of Gilliland's medical records for the relevant period, which included multiple imaging studies and treatment notes from four different doctors Gilliland consulted to address his back pain, and properly discounted Gilliland's testimony regarding the limiting effects of his pain. Her determination Gilliland had the RFC to perform a limited range of light work through his date last insured is supported by the relatively conservative treatment Gilliland received for his back pain during the relevant period. Accordingly, the ALJ was not required to have ordered a consultative examination or retained a medical expert to review Gilliland's medical records.

The state agency physician did conclude the record contained insufficient evidence to evaluate Gilliland's claim. (Tr. at 83). However, the ALJ assigned only some weight to that conclusion. (*Id.* at 18). The undersigned interprets the ALJ's discussion of the state agency physician's conclusion as indicating that while the ALJ credited the conclusion to the extent she found the record of Gilliland's treatment during the relevant period was limited, she discredited the conclusion to the extent she found the record was not so limited as to preclude evaluation of Gilliland's claim. (*See id.*). The ALJ was entitled to limit the weight afforded the state agency physician's opinion. *See Arnold v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 772, 779 (11th Cir. 2018) ("An ALJ may reject any medical opinion if the

evidence supports a contrary finding.") (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). Moreover, substantial evidence supports her reason for doing so. That evidence is the same evidence that supports her determination of Gilliland's RFC and overall evaluation of Gilliland's claim. Accordingly, Gilliland's third claim of error is without merit.

**D. Anxiety**

A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. 404.1521. The ALJ determined Gilliland's alleged anxiety did not constitute a medically determinable impairment during the relevant period. (Tr. at 14). This determination is supported by substantial evidence. Gilliland's medical records for the relevant period lack complaints of or treatment for anxiety or any other mental health issue.

Gilliland did initiate treatment with Dr. Andrew Wilkerson, a psychiatrist, in March 2015, more than five years after his date last insured. (*Id.* at 552). Dr. Wilkerson diagnosed Gilliland with severe agoraphobia and panic disorder and opined these mental impairments prevented Gilliland from working. (*Id.* at 563, 568-70). He indicated the onset date of the impairments was "several years prior"

to his first evaluation of Gilliland in March 2015. (*Id.* at 563).

A retrospective diagnosis – that is, a physician's opinion rendered after a claimant's date last insured that a claimant suffered from a disabling impairment before his date last insured – is entitled to deference only when the opinion is consistent with medical evidence pre-dating the claimant's date last insured. *Mason*, 430 F. App'x 830. It is not clear Dr. Wilkerson's diagnosis is retrospective. The phrase "several years prior" is vague enough to leave some question as to whether Gilliland's impairments were present by December 2009. Regardless, the diagnosis is not corroborated by evidence contemporaneous with the relevant period. While the ALJ did not explicitly state she considered and rejected Dr. Wilkerson's opinion for that reason, her statement the record lacked evidence Gilliland complained of or received treatment for a mental health impairment during the relevant period is a sufficiently clear implicit rejection of the opinion on that ground. *Compare Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (holding ALJ must state with particularity weight given to different medical opinions and the reasons therefor), *with Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016) (distinguishing *Winschel* and affirming the Commissioner's decision because the court was not left pondering why the ALJ made the decision he did and noting the court would not ignore the rest of the opinion merely because the ALJ failed to assign weight to or mention certain medical opinions); *see also Carson v. Comm'r of Soc.*

*Sec.*, 373 F. App'x 986, 988-89 (11th Cir. 2010) (holding ALJ did not err in treatment of medical opinions where ALJ's finding claimant failed to show his impairment began prior to his date last insured, which was an implicit rejection of those opinions, was supported by substantial evidence). Accordingly, Gilliland's fourth claim of error is without merit.

## V. Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the undersigned finds the Commissioner's decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 15th day of April, 2020.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE